## Lane Lumber & Milling Company v. Bond Brothers.

(Decided January 10, 1928.)

### Appeal from Hart Circuit Court.

1. Sales.—Title to goods cannot pass as long as anything remains to be done by either or both of parties to sales contract before delivery, either to determine identity of things sold, quantity, or price.
2. Sales.—Where B. sold standing timber to plaintiff, and contract provided that B. had option for 60 days to purchase lumber sawed from ties at certain price, when plaintiff and B. thereafter agreed upon quantity of lumber after price had already been agreed upon there was completed and executed contract which inured to benefit of L., to whom B. had sold lumber.
3. Sales.—Title to lumber passed to one buying same from B., who exercised option to buy from plaintiff, although B, or his buyer did not pay for lumber at time of contract, since failure to pay amounted to no more than breach of contract, for which plaintiff had its remedy.

C. B. DOWLING for appellant.

H. L. JAMES and C. B. LARIMORE for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

On the 25th day of April, 1922, the appellee made a contract with Lycurgus Burns, by the terms of which it

purchased sufficient standing timber located on his 800-acre farm in Hart county to make 50,000 oak ties.   There was a provision in the contract whereby Burns had the option for the period of 60 days to purchase the lumber sawed from the ties, and known as siding, for $9 per 1,000 feet.  Burns testified that he exercised his option by notifying appellee that he would purchase the siding in accordance with the terms of the contract.   But appellee is equally positive, as shown by the testimony of some of its officers, that he did not exercise his option.   The question, however, as to whether he exercised his option within 60 days, is not material to a decision of the questions involved in this suit.

On July 1, 1922, Burns and the appellant, Lane Lumber & Milling Company, entered into a contract whereby Burns sold to the milling company the lumber which he claims he had purchased from appellee.   By the terms of that contract, appellant, Lane Lumber & Milling Company, was to assume the payment of the purchase price for the lumber which Burns had agreed to pay to appellee in the event he exercised his option.

A disagreement seems to have arisen all around. Burns claimed that appellee was leaving the stumps too high and was not working his timber clean, as well as other complaints which are usually incident to disagreements which arise between the operator who is cutting the timber and the seller of the timber when it is sold and paid for on what is known as the ''stumpage'' basis. The appellant, Lane Lumber & Milling Company, made complaint that the lumber was not properly sawed, and that it was not properly stacked.   Before appellee had manufactured the 50,000 ties which it had purchased, the disagreements became so acute that it ceased operations. An effort was made to settle the controversies which had arisen without success, and finally appellee instituted suit against Burns seeking an injunction to prevent his interference with its cutting and manufacturing the remainder of the timber, and also seeking to have it adjudged that it was the owner of the lumber.   After the suit was instituted, the appellant, Lane Lumber & Milling Company, filed its intervening petition, in which it claimed that it was the owner of the lumber by reason of the contract with Burns.   Burns filed a counterclaim, in which he sought to recover damages from appellee on the ground that the timber had not been worked in a skillful

manner.   Appellee and Burns settled their controversy, and the only question left to be determined by the litigation was whether appellee was the owner of the lumber, or whether appellant was the owner of it.   It appears from the evidence that appellee and appellant have reached an agreement as to the terms of the settlement based upon the final determination of this litigation.

The special judge who tried the case reached the conclusion that the lumber belonged to appellee.   His written opinion in the case is a correct statement of the abstract principles of law.   In the opinion of the chancellor, the quantity of lumber had not been determined by the parties, and, as the title to the lumber could not pass as long as anything remained to be done by either or both of the parties to the contract of sale before delivery, either to determine the identity of the things sold, the quantity or the price, the contract was merely executory. Such is the general rule.

An examination of the evidence in this case, however, convinces us that the rule has no application here. Appellee's president testified that he personally went upon the ground in the latter part of 1922, and, after discussion of the questions with Burns, he and Burns agreed upon the quantity of lumber.   While he insists that the option was never exercised, he readily admits that he was willing for Burns to have the lumber at all times upon the terms and conditions set up in the contract.   When he and Burns agreed upon the quantity of the lumber after the price had already been agreed upon, there was a completed and executed contract.   Burns had sold the lumber to the appellant, and the contract which he had with appellee inured to the benefit of appellant.   Appellee knew that appellant was claiming the lumber.   Appellee's president narrows the matter down to where it is not difficult to reach a conclusion as to the situation immediately after he and Burns had agreed upon the measurements of the lumber.   Appellee at the time was owing Burns $550.   It expected that the lumber should be paid for in full in accordance with the contract price, less the amount which it was indebted to Burns.   Burns, however, claimed that appellee had damaged him, and, when a check was sent to the appellee by the appellant, Burns had not only caused the indebtedness of appellee to him to be deducted, but he had also acted as his own court and arbitrator and determined the amount of his damages, and that sum was deducted. Appellee returned

the check, as it was unwilling to allow Burns to fix his. amount of damages or to admit that he had been damaged. It then declared, at least in its own mind, that the contract was at an end, and it was the owner of the lumber, although it had some doubt of its position; else it. would not have asked a court to determine its ownership. The fact that Burns did not pay the amount owing for the lumber at the time, or that appellant did not pay the amount owing, amounted to no more than a breach of the contract for which appellee had its remedy. Under these circumstances we are constrained to hold that the title to the lumber passed through Burns to the appellant, and it was the owner thereof at the time of the institution of this suit, with the liability to appellee to pay for the lumber in accordance with the contract price. As the chancellor reached a different conclusion, his judgment must be reversed.

Judgment reversed, and cause remanded, for proceedings consistent with this opinion.